No. 2014-1225

IN THE

# United States Court of Appeals for the Federal Circuit

DOWNHOLE PIPE & EQUIPMENT, L.P., and
DP-MASTER MANUFACTURING CO., LTD,

Plaintiff-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

VAM DRILLING USA, TEXAS STEEL CONVERSIONS, INC.,
ROTARY DRILLING TOOLS, TMK IPSCO, AND U.S. STEEL CORP,

Defendant-Appellees.

Appeal from the United States Court of International Trade in
Case no. 11-CV-00081, Judge Nicholas Tsoucalas

**PETITION FOR PANEL REHEARING**
**of PLAINTIFF-APPELLANTS DOWNHOLE PIPE & EQUIPMENT, L.P., and DP-MASTER MANUFACTURING CO., LTD.**

LEHNARDT & LEHNARDT LLC
20 Westwood Drive
Liberty, MO 64068
Tel: (816) 407-1400; Fax816-407-9088
Email: Mark@Lehnardt.com
*Counsel for Downhole Pipe & Equipment, L.P., & DP-Master Manufacturing Co., Ltd.*

Date: March 13, 2015

# CERTIFICATE OF INTEREST

Counsel for plaintiff-appellants Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd., certifies the following:

1. The full name of every party or amicus represented by me is: **Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd.**

2. The name of the real party in interest represented by me is: **Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party of amicus curiae represented by me are: **None.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: **LEHNARDT & LEHNARDT, LLC (Mark B. Lehnardt).**

Dated: March 13, 2015

/s/ Mark B. Lehnardt
Mark B. Lehnardt

*Counsel for Plaintiff-Appellants Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd.*

**TABLE OF CONTENTS**

Page

POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 2

I. The Court Did Not Address Record Evidence Or Legal Arguments Related To Scope And Industry Support .......... 3

A. Appellants identified green tube intended for oil country tubular goods that satisfies all three criteria adopted by Commerce .......... 4

B. Downhole explained how scope language excluding green tube "covered by any other order" was ineffective .......... 7

C. Downhole cited law specifically allowing for judicial challenge to industry support after an investigation concludes .......... 9

II. Downhole Provided A Substantiated Reference Point To Establish The Unreasonableness Of The Green Tube Surrogate Value .......... 10

CONCLUSION .......... 12

# POINTS OF LAW OR FACT OVERLOOKED OR MISAPPREHENDED

## Scope/Industry Support

1. ***Point of Fact***: The opinion states that "Appellants have failed to identify any green tube intended for oil country tubular goods that satisfies all three of those criteria."

*Response*: Downhole described and cited to record evidence identifying significant green tube suitable for oil country tubular goods that satisfy all three criteria.

2. ***Point of Fact***: The opinion states that "'Downhole Pipe did not analyze the purported overlap in light of . . . potentially remedial exception" in the scope language.

*Response*: Downhole explained how the "potentially remedial exception" was ineffective.

3. ***Point of Law***: The opinion states that a statutory bar precludes any reconsideration industry support after initiation of an investigation.

*Response*: Downhole pointed to language in the SAA and prior case law permitting judicially-ordered reconsideration of industry support.

## Surrogate Value

4. ***Point of Fact***: The opinion rejects Downhole's arguments about how unreasonable the green tube surrogate value is, stating, "Downhole fails to do so using substantiated reference points."

*Response*: Downhole pointed to an indisputably substantiated reference point: Petitioners' average unit value for drill pipe sales in 2006-2008.

## INTRODUCTION

This Petition for Panel Rehearing, pursuant to Rule 40 of the Federal Rules of Appellate Procedure and Rule 40 of the Federal Circuit Rules, is submitted on behalf of Plaintiff-Appellants Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd. (collectively, "Downhole"), in response to the January 29, 2015 opinion issued by this Court, which resolved the case in favor of Defendant-Appellee the United States ("Commerce"), and Defendant-Appellees VAM Drilling USA, Texas Steel Conversions, Inc., Rotary Drilling Tools, and TMK IPSCO (collectively, "Petitioners"). *Downhole Pipe & Equipment, L.P. v. United States* ("*Downhole Pipe III*"), 776 F.3d 1369 (Fed. Cir. 2015).[1]

## ARGUMENT

Downhole Pipe respectfully request that this Court reconsider its opinion in view of record evidence and legal authority highlighted in Downhole Pipe's briefing and oral argument, but not addressed in the opinion. First, this Court did not address record evidence cited by Downhole establishing that green tube used to produce other oil country tubular goods ("OCTG") satisfy all three criteria included in the scope language. Second, this Court did not address Downhole's argument why scope language intended to carve out drill-pipe green tube from the OCTG scope was ineffective. Third, this Court did not address the legal authority

[1] As noted in Downhole's February 26, 2015 Objection to the Bills of Costs, Downhole does not seek an award of costs, regardless of outcome.

Downhole quoted that allows judicial challenge to industry support. Fourth, this Court did not address a substantiated reference point in record evidence that establishes the unreasonableness of the green-tube surrogate value. Downhole believes that consideration of this record evidence and legal authority will change the outcome of the case because they are foundational aspects of the two issues presented.

## I. The Court Did Not Address Record Evidence Or Legal Arguments Related To Scope And Industry Support

This Court rejected as "unavailing" Downhole's argument that Commerce impermissibly included green tube within the scope of the investigation. *Downhole Pipe III*, 776 F.3d at 1376. This Court concluded that "substantial evidence supports Commerce's identification of three physical characteristics that distinguish green tube for drill pipe from that intended for oil country tubular goods." *Id.* The Court then rejected Downhole's scope and industry support arguments for three reasons. First, this Court found that Downhole "failed to identify any green tube intended for oil country tubular goods that satisfies all three of those characteristics," or to call into question Commerce related findings. *Id.* at 1377. Second, this Court pointed to scope language specifically excluding green tube "covered by any other order," and found that "Downhole Pipe did 'not analyze the purported overlap in light of this potentially remedial exception.'" *Id.* (*quoting Downhole Pipe & Equip. LP v. United States* ("*Downhole Pipe I*"), 887

F.Supp.2d 1311, 1319 (Ct. Int'l Trade 2012). Third, this Court concluded that a statutory bar precludes reconsideration of industry support. *Id.* at 1377.

Contrary to this Court's conclusions, however, Downhole's briefing both cited record evidence establishing green tube suitable for OCTG satisfying all three criteria, and explicitly rebutted the validity of the "'potentially remedial exception.'" Further, Downhole presented legal argument that judicially-ordered reconsideration of industry support is approved by Congress and prior case law.

**A. Appellants identified green tube intended for oil country tubular goods that satisfies all three criteria adopted by Commerce**

Commerce adopted three criteria that it claimed distinguished green tube suitable for drill pipe from green tube suitable for other OCTG: (1) seamless production, (2) 6 5/8 inch outer diameter or smaller; and (3) specific chemistry based upon percentages of molybdenum and chromium. Commerce Br. at 17; PJA1900. The opinion affirms this criteria, and finds that Downhole "failed to identify any green tube intended for oil country tubular goods that satisfies all three of these criteria." *Downhole Pipe III*, 776 F.3d at 1377.

Contrary to this finding, however, Downhole identified record evidence establishing that individual green tube suitable for OCTG satisfy all three criteria adopted by Commerce. *See* Downhole Br. at 31-32; Downhole Reply Br. at 8-10. Downhole did so by identifying green tube suitable for OCTG that *must* satisfy each criterion or *may* satisfy each criterion; and then identifying green tube

suitable for OCTG that *must* satisfy all three criteria, or *may* satisfy all three criteria.

Regarding the first criterion, seamless production, Downhole quoted Petitioner's statement that "'much of the green tube for casing and tubing, but not all, must be made seamlessly.'" Downhole Br. at 31 (*quoting* PJA1774). Downhole also cited uncontroverted industry standards on the record listing six types of OCTG whose green tube *must* be seamless, and establishing that *all* other OCTG *may* be produced seamlessly. *See* Downhole Br. at 31 (*citing* CJA1979); Downhole Reply Br. at 10 (same).

Regarding the second criterion, outer diameter, Downhole cited to the uncontroverted industry standards on the record establishing *identical* outer diameter measurements *required* for *all* types of OCTG at more than half of the drill pipe industry-standard outer-diameter measurements. *See* Downhole Br. at 31 (*citing* PJA441-PJA442, PJA551); Downhole Reply Br. at 10 (*citing* PJA1741-PJA1743).

Regarding the third criterion, chemistry, Downhole specifically cited to the uncontroverted industry standards on the record establishing that four types of OCTG *must* have overlapping chemistry, and that almost all other OCTG *may* be produced to overlapping chemistry requirements. *See* Downhole Br. at 31-32.

Thus, as demonstrated in the chart below, industry standard production guidelines *require* that C90 type 1, T95 (type 1), and T95 (type 2) satisfy all three criteria; production guidelines for *seamless* P110 and Q125 *require* that they satisfy all three criteria; and almost all other OCTG may be produced to satisfy all three criteria:

| OCTG (casing or tubing) | Seamless (must/may) | Identical Outer Diameter | Overlapping Chemistry (yes/no/may) |
|---|---|---|---|
| H40 | may | YES | may |
| J/K55 | may | YES | may |
| N80 | may | YES | may |
| M65 | may | YES | may |
| L80 (type 1) | may | YES | may |
| L80 (9Cr) | MUST | YES | no |
| L80 (13Cr) | MUST | YES | no |
| **C90 (type 1)** | **MUST** | **YES** | **YES** |
| C90 (type 2) | MUST | YES | may |
| C95 | may | YES | may |
| **T95 (type 1)** | **MUST** | **YES** | **YES** |
| **T95 (type 2)** | **MUST** | **YES** | **YES** |
| P110 | may | YES | YES |
| Q125 (types 1-4) | may | YES | YES |

*See* Downhole Br. at 8-9, 31-32 (*citing* PJA441-PJA442, PJA551, PJA1679, PJA1756, PJA1773-PJA1774, PJA2079/CJA2588, CJA1979); Downhole Reply Br. at 8-10 (*citing* CJA1979, CJA1981, PJA1741-1743).[2]

[2] Downhole's Reply Brief contains the correct citation to CJA1981 for industry standards related to chemistry. Downhole Reply Br. at 10. Downhole's Opening Brief inadvertently cited to PJA1981 for these standards, but this citation is incorrect and does not provide information related to chemistry. Downhole Br. at 5, 8, 32.

Accordingly, contrary to this Court's finding, Downhole identified a significant amount of "green tube intended for oil country tubular goods that satisfies all three criteria." This detracting, contradictory evidence precludes Commerce's finding from attaining the support of substantial evidence.

### B. Downhole explained how scope language excluding green tube "covered by any other order" was ineffective

This Court added to its rational affirming Commerce determination about the scope of the investigation, stating that even if Downhole had identified green tube for OCTG satisfying all three criteria, this Court did not see any attempt by Downhole to address potentially remedial scope language:

> Even if Downhole Pipe had been able to do so, moreover, Commerce added an explicit exception to exclude any such overlapping goods: "The scope does not include ... unfinished tubes for casing or tubing covered by any other antidumping or countervailing duty order." *Final Determination*, 76 Fed.Reg. at 1,967. As the CIT pointed out, Downhole Pipe did "not analyze the purported overlap in light of this potentially remedial exception," *Downhole Pipe I*, 887 F.Supp.2d at 1319, and makes no attempt to do so before this court.

*Downhole Pipe III*, 776 F.3d at 1377.

Contrary to this Court's finding, Downhole rebutted "the purported overlap in light of {the} potentially remedial exception." Downhole argued that, because green tube suitable for drill pipe is already covered by the *OCTG Order*, it cannot later be carved out of the *OCTG Order* by language in the *Drill Pipe Order* (which

it awkwardly attempts to do by specifically excluding unfinished tubes for casing and tubing covered by any other order, but not green (unfinished) tube for drill pipe covered by any other order). *See* Downhole Reply Br. at 8; *compare Certain Oil Country Tubular Goods From the People's Republic of China*, 75 Fed. Reg. 3203, 3203-04 (Dep't of Commerce January 20, 2010) (amended final and countervailing duty order) ("*OCTG Order*"), *with Drill Pipe from the People's Republic of China*, 76 Fed. Reg. 11,757 (Dep't Commerce) (March 3, 2011) (antidumping duty order) ("*Drill Pipe Order*").

Downhole further explained that the OCTG scope specifically includes green tube for drill pipe by including green tube for all oil country tubular goods without any limiting exception. *See* Downhole Br. at 33; Downhole Reply Br. at 4-8. Downhole also explained how the term "oil country tubular goods" includes casing, tubing, *and* drill pipe. *See* Downhole Reply Br. at 5-7. Downhole illustrated the point with rectangles and squares (with squares representing green tube suitable for drill pipe, and rectangles representing green tube suitable for all types of oil country tubular goods): all squares are rectangles, just as all green tube for drill pipe are also green tube for oil country tubular goods. *See* Downhole Reply Br. at 5. Thus, Downhole analyzed the overlap in light of the invalid "potentially remedial exception." *Id.*

### C. Downhole cited law specifically allowing for judicial challenge to industry support after an investigation concludes

After addressing the criteria and "potential remedial exception," this Court rejected the possibility of a reconsideration of industry support. *Downhole Pipe III*, 776 F.3d at 1377. Instead, the Court relied upon its findings – disputed above – that Downhole "failed to demonstrate Commerce erred in including green tube within the scope," and pointed to the statutory bar on *Commerce's* reconsideration of industry support in an investigation. *Downhole III,* 776 F.3d at 1377. In light of this finding, the Court stated, the "statutory bar means the contention that Commerce must redetermine whether there is sufficient industry support necessarily fails." *Id.*

This Court did not address, however, Downhole's legal argument regarding judicially-ordered reconsideration of the industry support calculation. *See* Downhole Br. at 33-35 (*quoting Statement of Administrative Action accompanying the Uruguay Rounds Agreement Act of 1994*, H.R. Rep. No. 103-316 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4194) ("{i}nterested parties will continue to be able to challenge the adequacy of Commerce's industry support determination . . . {if Commerce} subsequently issues an antidumping or countervailing duty order."); *Save Domestic Oil, Inc. v. United States*, 240 F. Supp. 2d 1342, 1348-53 (Ct. Int'l Trade 2002) (remanding for a redetermination of industry support), *aff'd* 357 F.3d 1278 (Fed. Cir. 2004); *PT Pindo Deli Pulp and*

*Paper Mills v. United States*, 825 F. Supp. 2d 1310, 1326 (Ct. Int'l Trade 2012) (requiring that industry support be challenged before Commerce prior to initiation before a judicial challenge may be brought)); Downhole Reply Br. at 2-4 (same).

Downhole argued that, in light of the SAA and relevant case law, "section 1673(a)(c)(4)(E) must be read to prevent Commerce from revisiting industry support during the pendency of the investigation only, but not to prevent Commerce from revisiting industry support upon judicial remand." Downhole Reply Br. at 3.

## II. Downhole Provided A Substantiated Reference Point To Establish The Unreasonableness Of The Green Tube Surrogate Value

After selecting a $1,300 per-metric-ton surrogate value ("SV") for green tube in the preliminary determination and a $2,500 per-metric-ton SV in the final determination, Commerce selected a nearly $5,000 per-metric-ton SV in its remand redetermination. *See* Downhole Br. at 12,15; Downhole Reply Br. at 13. Downhole argued that the $5,000 per-metric-ton SV for green tube was aberrantly high – higher than the value of finished drill pipe – and thus unreasonable. Downhole Br. at 37-43; Downhole Reply Br. at 11-22. This Court, however, agreed with Commerce's argument that "'{a}lthough Downhole succeeds in creating a stark comparison {among possible green tube SV and a purported reasonable value}, Downhole fails to do so using substantiated reference points.'" *Downhole Pipe III*, 776 F.3d at 1380.

Contrary to this Court's finding however, Downhole provided a substantiated reference point. Downhole argued as follows: "{t}hat the {green tube SV} is aberrantly high is readily apparent when comparing . . . the $4,978.08 green tube SV with Petitioners' 2006-2008 AUV for *finished* drill pipe." Downhole Reply Br. at 12-15; *see also* Downhole Br. at 39-40; CJA85/PJA85. Downhole also relied upon the uncontroverted industry expert testimony establishing that green tube is just 30% of the value of finished drill pipe. Downhole Br. at 5, 39-40 (*citing* PJA660); Downhole Reply Br. at 14-15 (same). These data are substantiated reference points that Petitioner included in the Petition, based upon their own data. *See* Downhole Br. at 40 (*citing* CJA85); Downhole Reply Br. at 18 (same).

The comparison of the $5,000 green tube SV and the Petitioners 2006-2008 AUV for finished drill pipe indeed is stark, and merits additional consideration by this Court.

## CONCLUSION

For the foregoing reasons, Downhole respectfully petitions this Court to reconsider its opinion in light of the factual and legal arguments included in Downhole's briefing, but not addressed in the Court's opinion. Further, Downhole states that, regardless of outcome, it does not seek an award of cost.

Respectfully submitted,

/s/ Mark B. Lehnardt
Mark Lehnardt

LEHNARDT & LEHNARDT LLC
20 Westwood Drive
Liberty, MO 64068
Tel: (816) 407-1400
Fax: 816-407-9049
e-mail: Mark@Lehnardt.com

*Counsel for Downhole Pipe & Equipment, L.P., and DP-Master Manufacturing Co., Ltd.*

Dated: March 13, 2015